## MID-CONTINENT PETROLEUM CORPORATION v. NARVERUD MOTOR COMPANY.[1]

November 21, 1952.

No. 35,766.

*Meighen, Knudson, Sturtz & Peterson* and *Chester W. Johnson,* for appellant.

*Nichols & Tuveson, R. H. Wills,* and *Ben Hatcher,* for respondent.

MAGNEY, JUSTICE.

On May 16, 1944, a written lease, designated as "Private Service Station Lease," was entered into by Lawrence H. Bailey, as lessor, and plaintiff, Mid-Continent Petroleum Corporation, as lessee. By its terms Bailey leased to plaintiff a parcel of land in Albert Lea which was used as a motor service station. Bailey was at that time the owner of the property. On June 14, 1948, a written stipulation was made and executed by plaintiff and defendant, Narverud Motor Company, which had become the owner of the property subject to

[1]Reported in 55 N. W. (2d) 626.

the above-mentioned lease. In the stipulation the parties ratified and confirmed the lease of May 14, 1944, and corrected the description of the property therein. Defendant became the substitute lessor in said lease.

The plaintiff in its complaint alleges that a controversy has arisen between plaintiff and defendant as to whether the lease and stipulation are valid and enforceable, as to the meaning and validity of various terms and provisions of the lease and stipulation, and as to the rights and liabilities of the plaintiff and defendant thereunder. For this reason plaintiff desires the court, under the uniform declaratory judgments act (M. S. A. c. 555), to determine the questions raised. It is the contention of the plaintiff that all of the terms and provisions of the lease and stipulation are valid and enforceable. Defendant admits a controversy has arisen between plaintiff and defendant as claimed by plaintiff but sets out in its answer that the lease and stipulation are of no force and effect, are invalid, illegal, and wholly unenforceable in all of their terms and provisions. From the above facts, it is apparent that an action for a declaratory judgment lies.

In paragraph 6 of its answer, defendant alleges in great detail and at length certain facts showing plaintiff's method of doing business which, together with plaintiff's requirement that all its independent dealers sign so-called "all requirement" contracts amounting in effect to exclusive dealing contracts, defendant claims constitutes an unreasonable restraint of trade prohibited by § 1 of the Sherman Anti-Trust Act (26 Stat. 209, 15 USCA, § 1) and the Clayton Act (38 Stat. 730, 15 USCA, § 12, *et seq.*). Attached to the answer and made a part of paragraph 6 are exhibits 1, 2, and 3. Exhibit 1 is a one-year lease with provisions for renewal dated April 1, 1948, with plaintiff as lessor and defendant as lessee. It covers the parcel of land described in the lease of May 16, 1944. Exhibit 2 is a Reseller's Contract dated March 8, 1948, with plaintiff as seller and defendant as buyer. This contract contains terms which defendant claims violate the federal statutes already referred to. Exhibit 3 is a one-year equipment lease dated June 5, 1948, covering

the station equipment described therein. No annual rental is set out. Defendant in paragraph 6 claims that the original lease, the stipulation, and exhibits 1, 2, and 3 constitute one entire and the whole agreement between the parties and that the original lease and the stipulation are only part of the arrangement between them.

Plaintiff moved to strike all of paragraph 6 and several other paragraphs of the answer. The court struck paragraph 6 but otherwise denied plaintiff's motion. Defendant appeals from the order striking paragraph 6.

Defendant contends that the allegations in paragraph 6 are relevant, pertinent, and necessary to present the defense of illegality; that the facts alleged therein as to plaintiff's business practices together with the agreements, exhibits 1, 2, and 3, if proved, would sustain the defense of illegality based on violation of the federal statutes covering unreasonable restraint of trade.

Plaintiff is asking the court only to construe and interpret the meaning and effect of the lease of May 16, 1944, and the stipulation of June 14, 1948. In 1944, Bailey was the owner of the property and defendant, Narverud Motor Company, had no interest in the premises. The only questions to be determined in the action, as we see it, are the legality of the original lease of 1944 and the stipulation between plaintiff and defendant, and the meaning and legal effect of various words and terms found in the two instruments. In paragraph 6 of the answer defendant asks the court to go into the plaintiff's business practices in all the midwestern states to determine whether such practices are in violation of federal anti-trust acts; also, to pass upon the validity of exhibits 1, 2, and 3, which did not come into existence until 1948, and which were executed by a new owner of the property. Even if every allegation of paragraph 6 were proved and the evidence sustained defendant's contention that under the federal anti-trust acts and the decisions it relies upon (Standard Oil Company of California v. United States, 337 U. S. 293, 69 S. Ct. 1051, 93 L. ed. 1371, and United States v. Richfield Oil Corp. [D. C.] 99 F. Supp. 280) plaintiff is guilty of the violations claimed, it could have no bearing on the question of the

legality of the lease entered into between plaintiff and Bailey in 1944, as modified by the stipulation. Exhibits 1, 2, and 3 were executed in 1948, and even if found to be illegal they could not possibly taint the original lease. If all the instruments involved here had been executed at the same or approximately the same time between the same parties as one transaction, we would have a different situation. The original lease was simply a service station lease. It had nothing to do with the business practices of plaintiff or with any sales contract, and it was executed several years before the sales contract was entered into. In our opinion, the trial court ruled correctly.

Order affirmed.